J-S58037-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAN-DAVID ROBERTS | |
| Appellant | No. 434 MDA 2015 |

Appeal from the Judgment of Sentence May 19, 2014
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0001970-2012

BEFORE:  GANTMAN, P.J., OLSON, J., and PLATT, J.*

MEMORANDUM BY GANTMAN, P.J.:                **FILED OCTOBER 15, 2015**

Appellant, Jan-David Roberts, appeals from the judgment of sentence entered in the Dauphin County Court of Common Pleas, following his negotiated guilty plea to indecent assault against a person under sixteen (16) years of age, and corruption of minors.[1]  We affirm.

The relevant facts and procedural history of this case are as follows. Appellant sexually abused his stepdaughter ("Victim") from approximately 2001 until 2005, when she was seven (7) to eleven (11) years old.  Victim reported the abuse when she was sixteen (16) years old, and the Commonwealth subsequently charged Appellant on June 26, 2012, with

_____

[1] 18 Pa.C.S.A. §§ 3126(a)(8) and 6301(a), respectively.

_____

*Retired Senior Judge assigned to the Superior Court.

corruptions of minors, unlawful contact with minor, and indecent assault of a person less than thirteen (13) years of age. On December 11, 2013, Appellant entered a negotiated guilty plea to indecent assault against a person under sixteen (16) years of age, and corruption of minors. The trial court deferred sentencing pending a sexually violent predator ("SVP") hearing. On May 19, 2014, the trial court held a SVP hearing, determined Appellant was a SVP, and ordered Appellant to be a lifetime registrant under the Sexual Offender Registration and Notification Act (SORNA).[2] Following the SVP hearing, the trial court sentenced Appellant to twenty-four (24) months of intermediate punishment for the indecent assault offense, and a consecutive sixty (60) months of probation for the corruption of minors offense.

On May 29, 2014, Appellant filed a timely notice of appeal to this Court; however, he withdrew the appeal on June 13, 2014. Appellant then filed a post-sentence motion *nunc pro tunc* on July 23, 2014, which the trial court denied on September 8, 2014. Appellant filed a notice of appeal on September 17, 2014; however this Court quashed Appellant's appeal because he did not have the trial court's permission to file his July 23, 2014 post-sentence motion *nunc pro tunc*.

On December 2, 2014, Appellant timely filed a petition pursuant to the

---

[2] 42 Pa.C.S.A. §§ 9799.10-9799.41.

Post-Conviction Relief Act,[3] asking the trial court to reinstate his post-sentence and direct appeal rights. The trial court granted Appellant's petition on January 8, 2015, and reinstated Appellant's post-sentence and direct appeal rights *nunc pro tunc*. On January 15, 2015, Appellant filed a *nunc pro tunc* post-sentence motion, which the trial court denied on February 4, 2015. On March 5, 2015, Appellant filed a timely notice of appeal to this Court. On March 10, 2015, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant timely complied on March 11, 2015.

Appellant raises the following issue for our review:

WHETHER THE TRIAL COURT ERRED IN DENYING APPELLANT'S POST-SENTENCE MOTION WHERE HIS SEXUALLY VIOLENT PREDATOR DESIGNATION WAS AGAINST THE WEIGHT OF THE EVIDENCE SO AS TO SHOCK ONE'S SENSE OF JUSTICE WHERE THE COMMONWEALTH DID NOT DEMONSTRATE THAT APPELLANT POSSESSES A MENTAL ABNORMALITY, AND THE TRIAL COURT FAILED TO CONSIDER STATUTORILY PRESCRIBED FACTORS INCLUDING BUT NOT LIMITED TO THE NATURE OF THE OFFENSE, APPELLANT'S PRIOR OFFENSE HISTORY, AND APPELLANT'S RISK OF REOFFENDING?

(Appellant's Brief at 4).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Scott A. Evans, we conclude Appellant's issue on appeal merits no relief. The trial

---

[3] 42 Pa.C.S.A. §§ 9541-9546.

court opinion comprehensively discusses and properly disposes of the question presented. (*See* Trial Court Opinion, filed May 28, 2015, at 2-8) (finding: Dr. Stein, expert in area of sexual offender assessment, completed evaluation of Appellant and testified on behalf of Commonwealth at SVP hearing; Dr. Stein testified Victim was seven (7) years old when abuse began and Appellant continued sexual abuse of Victim for at least four (4) years; Dr. Stein stated Victim's age and length of abuse were sufficient evidence to establish Appellant suffers from mental abnormality of pedophilia, an incurable condition that involves sustained sexual interest in child; Dr. Stein also testified that Appellant exhibited predatory behavior by repeatedly touching Victim while she was sleeping or half asleep; Dr. Stein indicated he found Appellant's relationship with Victim as her stepfather, Appellant's prior conviction involving sexual incident in 2008, Appellant's history of violating probation and parole, and Appellant's history of selling and using marijuana relevant to SVP determination; Dr. Stein acknowledged Appellant's participation in sex offender programming, but noted there was no information available regarding Appellant's progress; Dr. Stein concluded there was sufficient evidence to classify Appellant as SVP based on facts of case and consideration of statutory factors; therefore, court's determination that Appellant is SVP was not against weight of evidence). Accordingly, we affirm of the basis of the trial court's opinion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/15/2015

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS
             : DAUPHIN COUNTY, PENNSYLVANIA
             :
             :
      vs.       : NO. 1970-CR-2012
             :
             :
JAN-DAVID ROBERTS       :

## MEMORANDUM OPINION

Defendant Jan-David Roberts was charged with corruption of minors, unlawful contact, and indecent assault, stemming from the sexual abuse of his step-daughter, L. L.  On December 11, 2013, Defendant entered a negotiated guilty plea to indecent assault against a person under sixteen (16) years of age, and corruption of minors. After this Court accepted the plea, a sexually violent predator evaluation was ordered, and sentencing was deferred.

On May 19, 2014, following a sexually violent predator (SVP) hearing, this Court entered the following sentencing order: At Count 3 (indecent assault), twenty-four (24) months of intermediate punishment under the supervision of the Dauphin County Probation and Parole, the first twelve (12) months of which Defendant shall be on house arrest with electronic monitoring; Count 2 (unlawful contact), dismissed in accordance with the plea agreement; Count 1 (corruption of minors), a consecutive sixty (60) months of probation, and costs. Based upon the Court's findings following the SVP hearing, it was also ordered that Defendant become a lifetime registrant under the Megan's Law[1] requirements (Tier III).

---

[1] Megan's Law expired on December 20, 2012. *See* 42 Pa.C.S.A. §§ 9791–9799.9. The Sexual Offender Registration and Notification Act (SORNA) became effective in its place. *See* 42 Pa.C.S.A. §§ 9799.10–9799.41. While the statutory section numbers changed with the enactment of SORNA, the standards governing the expert witness assessment for the SVP hearing remained substantially the same.

4-8

In a post-sentence motion, Defendant asserted that this Court's SVP determination was contrary to the weight of the evidence. Defendant's motion for modification of his SVP determination was denied. A notice of appeal was filed, and later quashed by the Superior Court. Ultimately a PCRA petition was filed, and an order was issued by this Court reinstating Defendant's post-sentence and direct appeal rights.

Defendant raises one issue in his statement of matters complained of on appeal:

The trial court erred when it found appellant to be a Sexually Violent Predator as that finding was contrary to the weight of the evidence so as to shock one's sense of justice where the Commonwealth did not demonstrate that appellant possesses a mental abnormality, and the trial court failed to consider statutorily prescribed factors including but not limited to the nature of the office, appellant's prior offense history, and appellant's risk of reoffending.

The standard of review for a challenge to the weight of the evidence is well-settled:

> The finder of fact is the exclusive judge of the weight of the evidence as the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses. *See Commonwealth v. Champney*, 574 Pa. 435, 444, 832 A.2d 403, 408 (2003), *cert. denied*, 542 U.S. 939, 124 S. Ct. 2906, 159 L. Ed. 2d 816 (2004). As an appellate court, we cannot substitute our judgment for that of the finder of fact. *See Id.* Therefore, we will reverse a jury's verdict and grant a new trial only where the verdict is so contrary to the evidence as to shock one's sense of justice. *See Commonwealth v. Passmore*, 2004 PA Super 336, 857 A.2d 697, 708 (Pa. Super. 2004), *appeal denied*, 582 Pa. 673, 868 A.2d 1199 (2005). Our appellate courts have repeatedly emphasized that "[o]ne of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence." *Commonwealth v. Forbes*, 2005 Pa. Super. 37, 867 A.2d 1268, 1273 (Pa. Super. 2005) (internal quotes omitted).
>
> Furthermore, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim. *Champney*, 574 Pa. at 444, 832 A.2d at 408 (citation omitted).

2

*Commonwealth v. Rabold*, 920 A.2d 857, 860-861 (Pa. Super. 2007).

While Defendant raises his issue couched in terms of a weight of the evidence argument, this Court notes that in order to affirm a SVP designation, the Superior Court, as a reviewing Court, must be able to conclude that the fact-finder found clear and convincing evidence that the individual is a SVP. *Commonwealth v. Brooks*, 7 A.3d 852, 860 (Pa. Super. 2010).

> "To deem an individual a sexually violent predator, the Commonwealth must first show [the individual] 'has been convicted of a sexually violent offense as set forth in [section 9799.14]....' " *Commonwealth v. Askew*, 907 A.2d 624, 629 (Pa. Super. 2006), *appeal denied*, 591 Pa. 709, 919 A.2d 954 (2007). *See also* 42 Pa.C.S.A. § 9799.12. "Secondly, the Commonwealth must show that the individual has 'a mental abnormality or personality disorder that makes [him] likely to engage in predatory sexually violent offenses.' " *Askew, supra.* When the Commonwealth meets this burden, the trial court then makes the final determination on the defendant's status as an SVP. *Kopicz, supra.*
> An SVP assessment is not a trial or a separate criminal proceeding that subjects the defendant to additional punishment. *Commonwealth v. Howe*, 842 A.2d 436, 445–46 (Pa. Super. 2004). SVP status, therefore, does not require proof beyond a reasonable doubt; the court decides SVP status upon a show of clear and convincing evidence that the offender is, in fact, an SVP. *Commonwealth v. Killinger*, 585 Pa. 92, 104, 888 A.2d 592, 600 (2005).

*Commonwealth v. Prendes*, 97 A.3d 337, 357-58 (Pa. Super. 2014), *appeal denied*, 105 A.3d 736 (Pa. 2014).

After conviction but before sentencing, a court shall order an individual convicted of a sexually violent offense to be assessed by the Sexual Offenders Assessment Board. 42 Pa.C.S.A. § 9799.24(a). Section 9799.24(b) provides:

> **(b) Assessment.**—Upon receipt from the court of an order for an assessment, a member of the board ... shall conduct an assessment of the individual to determine if the individual should be classified as a sexually violent predator. The board shall establish standards for evaluations and for evaluators conducting the assessments. An assessment shall include, but not be limited to, an examination of the following:
>
> (1) Facts of the current offense, including:

3

(i) Whether the offense involved multiple victims.
(ii) Whether the individual exceeded the means necessary to achieve the offense.
(iii) The nature of the sexual contact with the victim.
(iv) Relationship of the individual to the victim.
(v) Age of the victim.
(vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.
(vii) The mental capacity of the victim.

(2) Prior offense history, including:

(i) The individual's prior criminal record.
(ii) Whether the individual completed any prior sentences.
(iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

(i) Age.
(ii) Use of illegal drugs.
(iii) Any mental illness, mental disability or mental abnormality.
(iv) Behavioral characteristics that contribute to the individual's conduct.

(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.
* * *
42 Pa.C.S.A. § 9799.24(b).

An SOAB board member conducts the assessment to determine if the individual should be classified as an SVP. *Id.* The SOAB merely assesses the defendant; it does not perform an adjudicative function. *Commonwealth v. Kopicz,* 840 A.2d 342, 351 (Pa.Super.2003). The statute dictates the factors for the expert to consider when making an SVP analysis.

*Prendes, supra,* 97 A.3d 337, 356-57.

At the SVP determination hearing, Dr. Robert Stein testified on behalf of the Commonwealth, and was determined to be qualified as an expert in his field. [Sexually Violent Predator Hearing, May 19, 2014, Notes of Testimony, p. 8]. In completing an evaluation in this matter, Dr. Stein reviewed a report by the SOAB investigator, response from defense counsel,

4

police reports on the index offense, prior sex offense records, and records from probation and parole and adult probation reports. [N.T., 5-19-15, p. 10].

Dr. Stein iterated that the required criteria to review in SVP assessments include the enumerated factors, along with a two-tier criteria: mental abnormality (a condition of sexual offending) and predatory behavior. [N.T., 5-19-15, pp. 9-12]. In reaching the conclusion that Defendant should be classified as a SVP, Dr. Stein stated:

> The main issues have to do with the age of the child who was seven when the acts started, and the duration of the offending involved sexual touching over a four to seven year period.
> With a four year course of conduct of sexual acts against a child, there is sufficient evidence of pedophilia, which is a condition that involves sustained sexual interest in a child, which [is] not considered a curable condition, and it meets the mental abnormality prong of the sexually violent predator statute.
> The second issue has to do with the predatory relationship. Repeated acts of sexual touching of this young child, many purportedly while she was sleeping or half asleep, to establish and maintain and promote a sexually victimizing relationship.
> Based on the meeting of the mental abnormality criteria and predatory behavior criteria, there is sufficient evidence in my opinion that meets the criteria for sexually violent predator as the statute describes it.

[N.T., 5-19-15, pp. 9-10].

Dr. Stein went on to present testimony regarding the other prongs of the SVP factors. The most relevant elements for Dr. Stein in concluding that Defendant met the SVP requirements were: The nature of the sexual consent with the victim was relevant, as it included sexual touching of a prepubescent child. As to the relationship to the victim, she was Defendant's step-child. As history is a pertinent factor, Defendant was involved in a crime involving a sexual incident in 2008.[2] Additionally, Defendant has a history of violation of probation and parole conditions. As age is a factor, Defendant was in his mid

---

[2] Specifically, Dr. Stein testified that that in December of 2007, there was a domestic disturbance call, and police reports indicate that Defendant's wife reported having caught Defendant in the act of sexually assaulting her 18-year-old niece. Defendant entered a nolo plea to criminal attempt sexual assault and furnishing alcohol to minors. [N.T., 5-19-15, pp. 12-13].

5

to late 20s – clearly an adult - and the child was 7 years old when the acts occurred. In terms of illegal drugs, Defendant had a history of using and selling marijuana. As far as behavioral history, such history is consistent with pedophilia. Also, while there is some history of participation in sex offender programming, there are no reports available from any providers on the progress. Finally, in terms of statistical factors associated with the offense, criminal history, history of any sort of violence, and having a sustained sexual interest in a young child are all associated with increased risk. [N.T., 5-19-15, pp. 11-12].

Dr. Stein acknowledged that the remaining factors were not present: the offense did not involve multiple victims, Defendant did not exceed the means necessary to achieve the offense, there was no known unusual cruelty, the victim was of normal mental capacity, there was no mental health history reported, and no additional behavioral characteristics. [N.T., 5-19-15, pp. 11-12].

When asked to explain why a behavioral history consistent with pedophilia is so important to his assessment, Dr. Stein responded that it is probably the single most important factor, in that if an individual demonstrates sexual interest in a child for six months or more, that is generally sufficient to diagnose pedophilia. He pointed out that here, the incidents in question went on for four years, from seven until she was eleven, and a very long period of time in this child's life, and that it is not considered a curable condition. [N.T., 5-19-15, pp. 13-14]. Dr. Stein also opined that the fact that the victim is Defendant's stepdaughter makes it that much tougher on the victim. [N.T., 5-19-15, p. 15].

6

In concluding that Defendant is a SVP, this Court rejected Defendant's claim that the Commonwealth did not demonstrate that he possesses a mental abnormality, and found it immaterial that other factors were not given attention.

As the Superior Court has summarized:

[W]ith regard to the various assessment factors, ... there is no statutory requirement that all of them or any particular number of them be present or absent in order to support a SVP designation. The factors are not a check list with each one weighing in some necessary fashion for or against SVP designation. Rather, the presence or absence of one or more factors might simply suggest the presence or absence of one or more particular types of mental abnormalities.

Thus, while the Board is to examine all the factors listed under Section [9799.24(b)], the Commonwealth does not have to show that any certain factor is present or absent in a particular case. Rather, the question for the SVP court is whether the Commonwealth's evidence, including the Board's assessment, shows that the person convicted of a sexually violent offense has a mental abnormality or disorder making that person likely to engage in predatory sexually violent offenses....Having conducted a hearing and considered the evidence presented to it, the court then decides whether a defendant is to be designated an SVP and thus made subject to the registration requirements of 42 Pa.C.S.A. [§§ 9799.10 – 9799.41].

*Commonwealth v. Brooks,* 7 A.3d 852, 863 (Pa. Super. 2010) (quoting *Commonwealth v. Feucht,* 955 A.2d 377, 381 (Pa. Super. 2008)); *Prendes, supra.* The *Brooks* Court also stated, "In discussing the absence of certain statutory factors...Appellant is essentially asking this Court to reweigh them. This we cannot do." *Id.* at 863. *See also Commonwealth v. Meals,* 590 Pa. 110, 912 A.2d 213 (2006).

It is clear from the record that the factors that do exist in this case were of grave concern to Dr. Stein. Specifically, the victim was a very young stepdaughter of Defendant. The victim's age, Defendant's behavioral history, and length of time that the contacts took place, were consistent with pedophilia, which was the most important element in Dr. Stein's evaluation.

7

Because the record reflects clear and convincing evidence of Defendant's classification as a

SVP, there was no error in such determination. *Brooks, supra.*

BY THE COURT:

_____
Scott Arthur Evans, Judge

DATED: _____MAY 28, 2015_____

Distribution: 5-28-15 @ 130pm
Jennifer Hartlep, Esq., District Attorney's Office / 0
Ryan H. Lysaght, Esq., Public Defender's Office / 0
Prothonotary, Superior Court of Pennsylvania Mai /
Chambers of Judge Scott Arthur Evans / 0

8